IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RAMZAN ALI KARIMI,

    Plaintiff,

v.

BP PRODUCTS NORTH AMERICA, INC.,

    Defendant.

CIVIL ACTION NO.
1:06-CV-00902-JEC

## ORDER

Plaintiff currently operates a retail gasoline station at Candler Road in Decatur, Georgia and is a franchisee of the defendant's. Defendant has sent notice to plaintiff that, as a result of plaintiff's breach of provisions in the Dealer Supply Agreement ["DSA"], which agreement controls the parties' relationship, the defendant is terminating plaintiff as a franchisee at the above location, effective May 3, 2006. Defendant contends that plaintiff's misdemeanor conviction of employing illegal aliens constitutes a breach of the specified provisions.

Plaintiff has filed suit, alleging that defendant has breached the contract and that defendant's actions are in violation of the Petroleum Marketing Practices Act ["PMPA"], 15 U.S.C. § 2801, et seq. This case is before the Court on plaintiff's Motion for Preliminary

Injunction [1,2] to enjoin defendant from terminating the franchise prior to full litigation of the action. The motion has been well-briefed by both parties.

I. **Standard for Injunctive Relief Under the Petroleum Marketing Practices Act**

As plaintiff correctly notes, the PMPA allows a gasoline franchiser to terminate a retail franchisee only upon certain specified statutory grounds. 15 U.S.C. § 2802. In addition, the franchisee must be given adequate and timely notice of the franchiser's intent to terminate the franchise. 15 U.S.C. § 2804. The PMPA creates a private right of action for a franchisee who believes that he has been the subject of an unlawful termination. 15 U.S.C. § 2805. In such an action, the franchiser bears the burden of proving that the termination will comply with the statute. 15 U.S.C. § 2805(c). Moreover, a plaintiff may obtain a preliminary injunction, upon meeting the required showing, in advance of an announced termination. 15 U.S.C. § 2805(b). (Pl's Mem. [2] at 4.)

As plaintiff also correctly notes, the standard for obtaining a preliminary injunction under the PMPA is an easier standard than typically applies to requests for injunctive relief. Once the franchisee establishes that it will incur the greater hardship if the franchise is terminated, the plaintiff then needs to show only a reasonable chance of success on the merits; plaintiff does not need

2

to show a substantial likelihood of success, as it typically required to obtain injunctive relief in other contexts. (Pl's Mem. [2] at 6.) The plaintiff must show only that there are sufficiently serious questions concerning the propriety of the termination to obtain injunctive relief. (*Id.*) Moreover, the defendant has the burden of demonstrating that the termination was based on one of the statutorily enumerated grounds. (*Id.*)

## II. Contentions of the Parties

Plaintiff contends that defendant cannot demonstrate that plaintiff breached a provision of the agreement that would be "'both reasonable and of material significance to the franchise relationship.' 15 U.S.C § 2802(B)2)(a)." (*Id.* at 7.) Plaintiff also contends that defendant gave notice of the termination more than 120 days after the defendant would have been on actual or constructive notice of the existence of a ground for termination. (*Id.* at 10-11.) At the least, plaintiff argues, there are sufficiently serious questions going to the merits, and hence an injunction should issue. (*Id.* at 17.) Finally, plaintiff avers that, on balance, the hardships imposed upon defendant by the issuance of the injunction are less than those that plaintiff would experience if the injunction were not issued. (*Id.* at 18.)

Defendant opposes plaintiff's request for injunctive relief, arguing that plaintiff has no chance of prevailing on the merits and

3

that the balance of hardships favors the defendant. (Def.'s Mem. Opp'n [4] at 1.)

### III. Is Defendant's Termination of the Franchise Warranted by Plaintiff's Breach of the Agreement?[1]

Defendant contends that plaintiff violated three provisions of the DSA: ¶¶ 9(a)(15); 18(d); and 18(m).  Paragraph 9 requires, in essence, that the franchisee, or dealer, operate his facility in a manner that will not detract from or disparage the defendant's image for high standards.  It provides as follows:

> Dealer recognizes that BP has developed a favorable reputation for the sale of motor fuel and associated products and the rendering of high quality services and that the BP Trade Identities and facility designs and appearance represent an image distinguished for high standards of product quality, facility appearance (inside and out) and customer service.  Therefore, Dealer agrees to manage, operate and maintain the Facility in a manner that will maintain and enhance this image and which in no event will detract from or disparage this image.

(Exh. A at ¶ 9.) (Def.'s Mem. Opp'n [4] at 9.)

Of particular significance to this litigation, paragraph 9(a)(15) requires the plaintiff to:

> (15)   Comply with all laws, ordinances, rules and regulations of constituted public authority governing the use and occupancy of the Facility and the conduct of Dealer's business at the Facility.

---

[1] Although the defendant contends that plaintiff has failed to demonstrate that the balance of hardships falls heavier on plaintiff, than on the defendant, the Court will assume, without deciding, that plaintiff has made the necessary showing.

4

(Exh. A at p. 5, ¶ 9(a)(15).) (*Id.*)

Defendant contends that, by continuing to employ unauthorized aliens at his gas station, in violation of federal law, a misdemeanor offense to which the plaintiff pled guilty,[2] the plaintiff clearly failed to comply with "all laws" of the "public authority" "governing the use and occupancy of the facility and the conduct of Dealer's business at the facility."

With regard to paragraph 18 (d) and (m), these paragraphs provide that defendant has the right to terminate the DSA if there is a:

> (d)  Commission by the Dealer or any of Dealer's employees or agents of any deceptive, fraudulent, illegal, immoral, or other improper act relevant to the operation of the business on the Facility which is detrimental to BP or any member of the public . . .
>
> or
>
> (m)  Failure of the Dealer to comply with any law or regulation relevant to the operation of the Dealer's business on the Facility.

(Exh. A at p.10, ¶ 18(d) and (m).) (*Id.* at 10.)

Again, defendant argues that, by continuing to employ illegal

---

[2] The plaintiff had initially been indicted on two felony counts: (1) conspiracy to encourage and induce aliens to reside unlawfully in the United States and (2) actually encouraging and inducing aliens to so reside unlawfully; *United States v. Karimi, et al.*, 04-CR-554-RWS. On September 13, 2005, the plaintiff pled guilty to the misdemeanor offense of continuing to employ unauthorized aliens. *United States v. Karimi*, 05-CR-421-RWS.

5

aliens in his business, which act was attested to by the plaintiff's plea of guilty and conviction for this conduct, the plaintiff committed an "illegal...act relevant to the operation of the business...which is detrimental to BP or any member of the public," in contravention of paragraph 18(d). Similarly, defendant contends that the plaintiff failed "to comply with any law or regulation relevant to the operation of the Dealer's business on the facility," as set out in paragraph 18(m).

The Court agrees with defendant that, by employing illegal aliens, in violation of federal law, the plaintiff breached the above three provisions of the DSA. The question then becomes whether the provision at issue and the breach by plaintiff, were of "reasonable and material significance to the franchise relationship." The Court again agrees with the defendant that the knowing employment of illegal aliens by a franchisee, particularly when that illegal act has become the subject of a criminal conviction, is a significant act that "detracts from and disparages the franchiser's public image." Plaintiff's conviction was a matter of public record. Potential customers might well avoid a gas station whose owner has been convicted of employing illegal aliens. Defendant's associations with a franchisee whom defendant knows to have been convicted of utilizing illegal aliens in the franchisee's business could suggest to the public that the defendant sanctions such illegal conduct, thereby

undermining the defendant's reputation of conducting an upstanding and law-abiding business. In short, the general provision requiring the franchisee to comply with the law is a fair and reasonable provision. Moreover, the particular criminal statute violated by the plaintiff is not technical in nature and it proscribes conduct whose occurrence affects the image of the franchise. Specifically, the statutory violation to which the plaintiff pled charged him with "engag[ing] in a practice of continuing to employ in the United States aliens...knowing and after learning that said person[s] were unauthorized aliens...." Thus, the Court concludes that the plaintiff cannot show that serious questions exist concerning the propriety of the termination of the lease.

Likewise, the defendant has also demonstrated that the criminal conduct in question would not only violate the DSA, but also is a ground for termination pursuant to the statute. Specifically, 15 U.S.C. § 2802(b)(2)(C) permits termination upon the "occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable...." As defendant notes, two of the events set out in the statute's non-exclusive list of events sufficient to trigger termination are met by the plaintiff's present conviction.

First, § 2802(c)(1) indicates that "fraud or criminal misconduct

7

by the franchisee relevant to the operation of the marketing premises" is an "event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable." Similarly, § 2802(c)(11) provides that the "knowing failure of the franchisee to comply with Federal, State, or local laws or regulations relevant to the operation of the marketing premises" is likewise an event sufficient to permit termination.

For the reasons set out above, the Court concludes that a statute prohibiting the employment of unauthorized aliens is a statute that is relevant to the operation of the franchise. Moreover, plaintiff's conviction of knowingly continuing to employ unauthorized aliens is an event that is relevant to the franchise relationship. Accordingly, the Court concludes that defendant's termination of the franchise is warranted by the PMPA.

## IV. Timing of the Defendant's Termination

Plaintiff has also contended that the defendant cannot terminate plaintiff's franchise because defendant sent notification more than 120 days after the latter was actually or constructively aware that the plaintiff had breached a material condition of the DSA. Specifically, 15 U.S.C. § 2802(b)(2)A) and (C) permit termination only if the franchiser notifies the franchisee of termination within 120 days of first acquiring actual or constructive knowledge of the

breach or relevant occurrence.

Here, defendant notified the plaintiff of termination on January 31, 2006. Plaintiff's guilty plea was entered on September 13, 2005. As 120 days from September 13th would be January 11, 2006, plaintiff contends that the defendant's notification was over two weeks late. As defendant has noted, however, plaintiff has offered no evidence that would suggest that defendant was aware of the plaintiff's guilty plea prior to defendant's receipt, on October 6, 2005, of the judgment entered in the criminal case. Accordingly, as the only evidence before the Court indicates that defendant's knowledge of this conviction occurred on the above date, defendant had until February 3, 2006 to notify plaintiff of the termination. Defendant met this deadline. In short, the Court concludes that defendant timely acted to notify the plaintiff of defendant's intention to terminate the franchise.

## V.   Conclusion

For all the above reasons, the Court **DENIES** plaintiff's Motion for Preliminary Injunction [2].

SO ORDERED, this 2 day of May, 2006.

                                                  JULIE E. CARNES
                                                  UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)